UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPREAD YOUR WINGS, LLC, et al., | Case No.  20-cv-03336-VKD |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| AMZ GROUP LLC, | Re: Dkt. No. 10 |
| Defendant. | |

Asserting diversity jurisdiction under 28 U.S.C. § 1332, plaintiffs Spread Your Wings, LLC ("SYW"), Blossom Hill Buildings, LLC ("BHB") and Andrew S. Dumbaya filed this action, seeking rescission of four agreements ("Agreements") SYW and BHB entered into with defendant AMZ Group, LLC ("AMZ").  AMZ now moves to dismiss this lawsuit, based on the doctrine of *forum non conveniens*, arguing that forum selection clauses in each of the Agreements require the parties' disputes to be brought in New York, where AMZ has already filed a contract action against plaintiffs.  Upon consideration of the moving and responding papers,[1] as well as the arguments presented at the August 4, 2020 motion hearing, the Court grants AMZ's motion, but rather than dismiss the complaint, the Court will instead transfer this matter to New York.[2]

---

[1] For the first time at the motion hearing, plaintiffs belatedly moved to strike paragraphs 2, 3 and 7 of Mr. Fidler's reply declaration (Dkt. No. 19-1).  *See* Dkt. No. 24 at 19.  Such objections must be filed within seven days after the reply is filed.  Civ. L.R. 7-3(d).  In any event, as the Court has not found it necessary to rely on those portions of Mr. Fidler's reply declaration, plaintiffs' motion to strike is deemed moot.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 17.

## I.     BACKGROUND

According to their complaint, SYW and BHB are California companies, and Mr. Dumbaya is SYW's owner and Chief Executive Officer.  Dkt. No. 1 ¶¶ 1-3.  SYW says that around April 2019, AMZ, a New York company, approached plaintiffs and offered to help SYW with its cash flow problems.  *Id*. ¶¶ 4, 7.  Between May 2019 and July 2019, SYW and BHB entered into four Agreements with AMZ, and Mr. Dumbaya signed related guaranties.  *Id*. ¶¶ 8, 12.  The complaint further alleges that the subject agreements, which are dated May 2, 2019, May 31, 2019, June 6, 2019 and July 29, 2019, ostensibly provide that plaintiffs were selling to AMZ a percentage of SYW's future receipts.  *Id*. ¶ 6.  That is, AMZ was to provide weekly cash advances to plaintiffs and would be repaid from the proceeds of SYW's future accounts receivable, to be collected via preauthorized electronic debits from SYW's bank account.  *Id*. ¶ 8.  For example, the May 2, 2019 Agreement indicates that plaintiffs sold a "Specified Percentage" of 24% of their future accounts to AMZ, and AMZ would deduct a "Specific Daily Amount" of $10,826.53 from plaintiffs' account.  Dkt. No. 13 at ECF 14; *see also* Dkt. No. 1 ¶ 8.  The May 2, 2019 Agreement further states that "[t]he Specific Daily Amount is intended to represent the Specified Percentage of [plaintiffs'] future Receipts each calendar month," and that the "Specific Daily Amount" could be adjusted "so the amount received by AMZ[] in the future more closely represents the Specified Percentage."  Dkt. No. 13 at ECF 16.  Additionally, "once each calendar month, [plaintiffs] may request that [AMZ] reconcile [plaintiffs'] actual receipts and adjust the Specific Daily Amount so that the amount received by [AMZ] in the future more closely represents the Specified Percentage."  *Id*.

In practice, plaintiffs allege that the amount of AMZ's total debits in a given week nearly equaled the amount of the week's cash advance and were never calculated as a percentage of SYW's receivables.  Dkt. No. 1 ¶ 8.  In this way, plaintiffs allege that AMZ soon depleted their account, SYW quickly became overextended, and AMZ claimed the initial May 2, 2019 loan was in default.  *Id*. ¶ 10.  According to the complaint, AMZ instructed SYW to attempt to cure the default by depositing all of SYW's accounts receivable into a bank account controlled by AMZ.  *Id*. ¶ 11.  Plaintiffs did so, reportedly in reliance on AMZ's alleged promise to remit 100% of

2

United States District Court
Northern District of California

1   SYW's accounts receivable to SYW.  *Id.*  In reality, plaintiffs say that AMZ applied their money

2   to the May 2, 2019 loan and kept SYW indebted to AMZ by issuing further Agreements.  *Id.*

3   Plaintiffs claim that the Agreements are not true merchant agreements for the purchase of future

4   receipts, but actually are predatory loans with annual percentage rates exceeding 179%.  *Id.* ¶¶ 6,

5   12.  Additionally, plaintiffs claim that AMZ engaged in illegal and unethical collection activities.

6   *Id.* ¶ 14.

7          Plaintiffs' complaint asserts claims for declaratory and injunctive relief, as well as for

8   violation of California Usury Laws, violation of California's unfair competition law ("UCL"), Cal.

9   Bus. & Prof. Code §§ 17200, *et seq.* (based on alleged violation of California Constitution art. XV

10   § 1, California Finance Code § 22000, *et seq.*, and California Welfare and Institutions Code

11   § 14115.5), and for money had and received.  Among other relief, the complaint seeks "rescission

12   of all agreements and restitution," as well as statutory penalties and damages of over $2 million.

13   Dkt. No. 1 at 23.

14          AMZ disputes that the Agreements are loans and contends that it performed its obligations

15   pursuant to the terms of the contracts.  According to AMZ, plaintiffs breached the Agreements by

16   taking AMZ's cash advances, and then switching bank accounts without notice to AMZ, thereby

17   preventing AMZ from making the authorized daily electronic debits.  Dkt. No. 10-1 ¶ 5 & Ex. 3

18   ¶¶ 17-21.  In February 2020, AMZ sued plaintiffs in New York Supreme Court, County of Kings,

19   for breach of contract, claiming that plaintiffs owe over $1.3 million under the four Agreements at

20   issue.[3]  *Id.*

21          Plaintiffs filed the present lawsuit in this District on May 15, 2020.

22          AMZ now seeks to enforce the forum selection clauses in the Agreements through the

23   doctrine of *forum non conveniens*.  Plaintiffs oppose the motion primarily on the ground that the

24   forum selection clauses in question violate a strong California public policy embodied by state

25   finance and usury laws, and therefore are not enforceable.  For the reasons discussed below, this

26

27   [3] Although AMZ's lawsuit remains pending in New York state court, the parties have agreed to stay those proceedings pending this Court's resolution of AMZ's present motion to dismiss.  *See*
Dkt. No. 24 at 7.

28

1    Court grants the motion and will transfer this action to federal court in New York.

2    **II.       LEGAL STANDARD**

3            A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is "a mechanism for

4    enforcement of forum-selection clauses that point to a particular federal district," *Atl. Marine*

5    *Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013), whereas "the appropriate

6    way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine

7    of *forum non conveniens*," *id.* at 60. "Section 1404(a) is merely a codification of the doctrine of

8    *forum non conveniens* for the subset of cases in which the transferee forum is within the federal

9    court system; in such cases, Congress has replaced the traditional remedy of outright dismissal

10   with transfer." *Id.* at 60. "And because both § 1404(a) and the *forum non conveniens* doctrine

11   from which it derives entail the same balancing-of-interests standard, courts should evaluate a

12   forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-

13   selection clause pointing to a federal forum." *Id.* at 61.

14           Even in diversity cases, federal law governs the analysis of the effect and scope of forum

15   selection clauses.  *Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1086 (9th Cir. 2018);

16   *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-32 (1988).  If the Court determines that

17   a dispute is covered by a forum selection clause, the forum selection clause should be enforced

18   "unless enforcement is shown by the resisting party to be 'unreasonable' under the

19   circumstances." *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972).  Where the parties

20   have agreed to a valid forum selection clause, the plaintiff's choice of forum merits no weight, the

21   parties' private interests are deemed to weigh entirely in favor of the preselected forum, and a

22   transfer of venue will not carry with it the original venue's choice-of-law rules.  *Atl. Marine*, 571

23   U.S. at 63-64.  Thus, a valid forum selection clause should be given "'controlling weight in all but

24   the most exceptional cases.'"  *Id.* at 63 (quoting *Stewart*, 487 U.S. at 33).  As the parties resisting

25   enforcement of the forum selection clauses, plaintiffs "'bear the burden of showing why the court

26   should not transfer the case to the forum to which the parties agreed.'"  *Sun*, 901 F.3d at 1087

27   (quoting *Atl. Marine*, 571 U.S. at 64).

28           A forum selection clause is unenforceable if the party resisting enforcement makes a strong

United States District Court
Northern District of California

4

1   showing that (1) "the clause [i]s invalid for such reasons as fraud or overreaching,"

2   (2) "enforcement would contravene a strong public policy of the forum in which suit is brought,

3   whether declared by statute or by judicial decision," or (3) proceeding in the selected forum will

4   be "so gravely difficult and inconvenient" that the complaining party "will for all practical

5   purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 15, 18; *see also Sun*, 901 F.3d

6   at 1088.

7   On a motion to enforce a forum selection clause, the pleadings need not be accepted as

8   true, and facts outside the pleadings may be considered. *Doe v. AOL, LLC*, 552 F.3d 1077, 1081

9   (9th Cir. 2009).

10  **III.    DISCUSSION**

11       **A.    Applicability and Scope of the Forum Selection Clauses**

12  Federal law applies to the interpretation of forum selection clauses. *Sun*, 901 F.3d at 1086;

13  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). When

14  interpreting a contract under federal law, courts "look to general principles for interpreting

15  contracts." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir.

16  1999); *see also Sun*, 901 F.3d at 1086. Whenever possible, the plain language of the contract is

17  considered first and contract terms are given their ordinary meaning. *Klamath Water Users*

18  *Protective Ass'n*, 204 F.3d at 1210.

19       The first three Agreements at issue contain a forum selection clause that provides that each

20  agreement is "governed by and construed in accordance with the law of the State of New York,

21  without regards to any applicable principles of conflicts of law." Each clause further states that

22  "[a]ny suit, action or proceeding arising hereunder, or the interpretation, performance or breach

23  hereof, shall, if AMZ[] so elects, be instituted in any court sitting in New York (the 'Acceptable

24  Forums')." Dkt. No. 10-1, Ex. 1; Dkt. No. 13, Ex. A. The July 29, 2019 Agreement contains

25  somewhat different language, but nonetheless similarly provides that the contract is "governed by

26  and construed exclusively in accordance with the laws of the state of New York, without regards

27  to any applicable principles of conflicts of law," and that "[i]f there is any suit, action or

28  proceeding arising hereunder, or the interpretation, performance or breach hereof or in any dispute

United States District Court
Northern District of California

5

1   arising among the parties, then such litigation shall only be instituted in any court sitting in New

2   York State (the 'Acceptable Forums')."  Dkt. No. 10-1, Ex. A; Dkt. No. 13, Ex. A.

3       Because the subject forum selection clauses provide that disputes must be brought in "any

4   court sitting in New York," the clauses permit suits to be brought in both federal and state courts

5   in New York.  *See AOL,* 552 F.3d at 1081-82 (construing a forum selection clause identifying

6   courts "*of* Virginia," as opposed to "*in* Virginia," to refer only to Virginia state courts and not to

7   federal courts in Virginia).

8       With respect to disputes covered by the forum selection clauses, the Ninth Circuit has held

9   that forum selection clauses for actions "arising out of" a particular agreement apply only to

10   disputes relating to the interpretation and performance of the contract itself."  *Sun,* 901 F.3d at

11   1086 (internal quotations and citation omitted).  "By contrast, forum-selection clauses covering

12   disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or

13   have some 'logical or causal connection' to the agreement."  *Id.*  "The dispute need not grow out

14   of the contract or require interpretation of the contract in order to relate to the contract."  *Id.*

15   Based on the language of the Agreements, the forum selection clauses at issue apply to disputes

16   relating to the interpretation and performance of the Agreements.

17       Although not articulated in their opposition papers, at oral argument plaintiffs contended

18   that the forum selection clauses cannot apply to any of their claims, which plaintiffs say are non-

19   contractual claims that sound in tort.  Dkt. No. 24 at 16.  However, forum selection clauses are not

20   limited to contract claims and "can be equally applicable to contractual and tort causes of action."

21   *Manetti-Farrow, Inc.*, 858 F.2d at 514.  The scope of the claims covered by a forum selection

22   clause depends on the language used in the clause.  Thus, for example, in *Manetti-Farrow, Inc.*

23   where the forum selection clause in question covered "disputes regarding 'interpretation' or

24   'fulfillment' of the contract," the Ninth Circuit stated that "[w]hether a forum selection clause

25   applies to tort claims depends on whether resolution of the claims relates to interpretation of the

26   contract."  *Manetti-Farrow, Inc.*, 858 F.2d at 514.  The Ninth Circuit found that the tort claims in

27   question fell within the scope of the forum selection clause requiring disputes to be brought in

28   Italy because those tort claims related to the parties' "central conflict over the interpretation of the

United States District Court
Northern District of California

6

1    contract." *Id*.

2          In the present action, although it is not clear whether the parties have a dispute about what

3    particular terms in the Agreements mean, the parties do dispute whether the Agreements properly

4    are characterized as merchant cash agreements or as loans.  The term "interpretation" in the

5    subject forum selection clauses would appear to be broad enough to encompass disputes over the

6    both the legal interpretation and characterization of the Agreements.  At the very least, the parties

7    clearly do have a dispute over performance of the Agreements, which in turn informs how the

8    Agreements should be characterized.  For example, the parties dispute whether, by their terms, the

9    Agreements had a legitimate objective and whether the parties' actual conduct or performance

10   deviates from what the Agreements provide.  Accordingly, the Court finds that the forum selection

11   clauses in each of the subject Agreements apply to plaintiffs' claims.

12          **B.      Validity and Enforceability of the Forum Selection Clauses**

13          As noted above, a forum selection clause must be enforced unless the party resisting

14   enforcement makes a strong showing that (1) "the clause [i]s invalid for such reasons as fraud or

15   overreaching" (2) "enforcement would contravene a strong public policy of the forum in which

16   suit is brought, whether declared by statute or by judicial decision," or (3) proceeding in the

17   selected forum will be "so gravely difficult and inconvenient" that the complaining party "will for

18   all practical purposes be deprived of his day in court."  *M/S Bremen*, 407 U.S. at 15, 18; *see also*

19   *Sun*, 901 F.3d at 1087.  The Court will address the first and third exceptions, and then turn to the

20   second exception, which appears to be plaintiffs' primary ground for opposing enforcement of the

21   forum selection clauses at issue.

22          **1.      Fraud or Overreaching**

23          Citing *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland, N.V.*, 145 F.3d 505 (2d

24   Cir. 1998), plaintiffs maintain that the four Agreements are unlawful and therefore void; and if the

25   agreements are entirely void, plaintiffs argue that there can be no valid forum selection clause.

26   Dkt. No. 12 at 18.  *Evolution Online* is distinguishable in that the parties to that case exchanged

27   draft contracts, but never entered into any written agreement.  145 F.3d at 507.  Absent a clear

28   finding by the district court regarding the existence of a contract, the Second Circuit concluded

United States District Court
Northern District of California

7

1     that the district court's determination that the parties agreed on a forum selection clause was

2     premature. *Id*. at 509. In the present matter, by contrast, there is no apparent dispute as to the

3     existence of any of the Agreements at issue.

4         Moreover, insofar as plaintiffs' arguments pertain to the validity of the Agreements as a

5     whole, they have not met their heavy burden to show that the forum selection clauses contained

6     within those contracts are invalid. Here, plaintiffs argue that "[a]ll of the indicia of fraud,

7     overreaching, [and] fundamental unfairness" are present. Dkt. No. 12 at 20. Plaintiffs suggest that

8     they were misled into entering into the Agreements, particularly with respect to the three

9     agreements executed after they entered into the initial May 2, 2019 Agreement. Dkt. No. 1 ¶ 11.

10     However, "[t]he fraud exception to the general rule of enforceability 'does not mean that any time

11     a dispute arising out of a transaction is based upon an allegation of fraud . . . the [forum selection]

12     clause is unenforceable [but r]ather . . . [that the] forum-selection clause in a contract is not

13     enforceable *if the inclusion of that clause in the contract* was the product of fraud or coercion.'"

14     *Aimsley Enters., Inc. v. Merryman*, No. 19-cv-02101-YGR, 2020 WL 1677330, at *5 (N.D. Cal.

15     Apr. 6, 2020) (quoting *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 n.14 (1974)); *see also*

16     *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) (the "Supreme Court has noted that

17     simply alleging that one was duped into signing the contract is not enough. . . . For a party to

18     escape a forum selection clause on the grounds of fraud, it must show that the inclusion of that

19     clause in the contract was the product of fraud or coercion.") (internal quotations and citation

20     omitted). Plaintiffs do not contend that the Agreements' inclusion of these forum selection clauses

21     specifically was the product of fraud or coercion.

22         "Overreaching is generally seen as 'a ground short of fraud.'" *Mechanix Wear, Inc. v.

23     Performance Fabrics, Inc*., No. 2:16-cv-09152-ODW (SS), 2017 WL 417193, at *5 (C.D. Cal.,

24     Jan. 31, 2017) (quoting *Murphy v. Schneider Int'l, Inc*., 362 F.3d 1133, 1141 (9th Cir. 2004)). "In

25     evaluating whether an agreement was the product of overreaching, courts have taken into account

26     factors such as the signer's level of education, power differentials between the parties, and

27     circumstances underlying the agreement's signing," including "how the clause is communicated."

28     *Id*. Plaintiffs claim that the Agreements are non-negotiable form contracts and that they were not

United States District Court
Northern District of California

United States District Court
Northern District of California

in an equal bargaining position with AMZ at the time the Agreements were executed.  They assert that they were not represented by counsel and did not realize that they were agreeing to a forum selection clause requiring disputes to be brought in New York.  *See* Dkt. No. 13 ¶ 20.[4]  Plaintiffs have not cited authority suggesting there is a *per se* rule that non-negotiated forum selection clauses are never enforceable.  *See generally Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).  Moreover, Mr. Dumbaya is SYW's owner and Chief Executive Officer.  Dkt. No. 1 ¶ 3.  Even assuming he was unaware of the forum selection clauses, the record indicates that he had reasonable notice of the clauses.  There is no indication that Mr. Dumbaya had insufficient time to review the contracts, or that he had no opportunity to seek legal advice.  Additionally, while the Agreements are in small type font, plaintiffs raise no issue regarding the font, and the forum selection clauses at issue are clearly labeled under the bold underlined heading "Binding Effect; Governing Law; Venue and Jurisdiction" or "Governing Law, Venue and Jurisdiction" in a four-page agreement.  Dkt. No. 10-1, Ex. 1; Dkt. No. 13, Ex. A.  *See generally, e.g., Mechanix Wear, Inc.*, 2017 WL 417193 at *5 (finding no overreaching where there was no evidence the party resisting enforcement of the forum selection clause was prevented from seeking legal counsel or that there was insufficient time for him to do so, and where the forum selection clause appeared under the bold underlined heading "Governing Law/Forum" in the middle of a 4–page typewritten agreement).

   Plaintiffs have not met their burden to establish this exception to enforcement of the forum selection clauses.

### 2.    Difficulty or Inconvenience of Proceeding in New York

   "Although the Supreme Court has not directly interpreted this [difficulty or inconvenience] exception, *Atlantic Marine* suggests it is difficult to satisfy."  *Sun*, 901 F.3d at 1091.  Indeed, "a [forum selection] clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit."  *Id.* (citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998)).  "*Atlantic*

---

[4] In considering this portion of Mr. Dumbaya's declaration, the Court has not considered legal argument and conclusions contained therein.

United States District Court
Northern District of California

1   *Marine* confirms this conclusion, and establishes that the fact that *certain types of remedies* are

2   unavailable in the foreign forum does not change the calculus if there exists a basically fair court

3   system in that forum that would allow the plaintiff to seek some relief." *Id.* (internal quotations

4   and citation omitted). "It is the *availability* of a remedy that matters, not predictions of the

5   likelihood of a win on the merits." *Id.* at 1092 (internal quotations and citation omitted). Thus,

6   "under *Atlantic Marine*, courts must enforce a forum-selection clause unless the contractually

7   selected forum affords the plaintiffs no remedies whatsoever." *Id.*

8       Here, Mr. Dumbaya points out that plaintiffs have had to retain New York counsel, and he

9   generally asserts that "New York is an inconvenient forum for plaintiffs." Dkt. No. 13 ¶ 27.

10  However, plaintiffs offer nothing to substantiate Mr. Dumbaya's assertions regarding

11  inconvenience, much less explain how they might be left with no remedy in New York or how the

12  purported difficulty of litigating in New York would be "so manifestly and gravely inconvenient"

13  to plaintiffs that they "will be effectively deprived of a meaningful day in court." *M/S Bremen*,

14  407 U.S. at 19. Plaintiffs have not met their burden to show that this exception to enforcement

15  applies to the forum selection clauses at issue.

16                  **3.      Contravention of a Strong Public Policy**

17      Plaintiffs' principal argument is that enforcement of the subject forum selection clauses

18  would contravene a strong public policy embodied in California's "usury and lender laws." Dkt.

19  No. 12 at 22. Here, plaintiffs argue that "the California usury and lender laws are unwaivable by

20  contract, specifically by the [A]greements' forum selection clause." *Id.*

21      "When a forum-selection clause violates 'a strong public policy of the forum in which suit

22  is brought,' then it 'should be held unenforceable.'" *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d

23  1160, 1166 (9th Cir. 2020) (quoting *M/S Bremen*, 407 U.S. at 15). The Ninth Circuit has "referred

24  to such policies as unwaivable public rights." *Id.* (internal quotations and citation omitted).

25  However, "the strong federal policy in favor of enforcing forum-selection clauses would supersede

26  antiwaiver provisions in state statutes as well as federal statutes, regardless whether the clause

27  points to a state court, a foreign court, or another federal court." *Sun*, 901 F.3d at 1090. "Given

28  that many state and federal statutes include antiwaiver provisions, a rule that such provisions

                                         10

preclude enforcement of a forum-selection clause would contradict *Atlantic Marine*'s general rule that forum-selection clauses are enforceable except in the exceptional case." *Id*. at 1090 n.7. Thus, "an antiwaiver provision, without more, does not supersede the strong federal policy of enforcing forum-selection clauses," and "the plaintiff must point to a statute or judicial decision that clearly states such a strong public policy." *Id*. at 1090.

Here, plaintiffs do not identify any particular "California usury and lender laws" that they claim reflect a strong California public policy. Instead, they urge this Court to follow *Sessions v. Prospect Funding Holdings LLC*, No. 16-02620 SJO (DTBx), 2017 WL 7156283 (C.D. Cal. July 13, 2017). *See* Dkt. No. 13 at 20-21. In *Sessions*, the parties entered into a contract whereby the defendant would provide the plaintiff with certain sums of money, secured by the plaintiff's assignment of damages from her personal injury lawsuit. The *Sessions* plaintiff claimed that the contract actually was a usurious loan. Notwithstanding a forum selection clause that required disputes to be brought in New York, the plaintiff filed suit in California, asserting claims for violation of California's usury law, unlawful contract, and for violations of California's unfair competition law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*. (with California's Finance Lender Law, Cal. Fin. Code §§ 22000, *et seq*. asserted as the predicate for her UCL claim). In view of a choice-of-law provision in the parties' contract, the *Sessions* court declined to enforce the forum selection clause and transfer the action to New York, finding that a transfer would "likely result in the application of New York law" and "effectuate a waiver of nonwaivable claims." *Sessions*, 2017 WL 7156283 at *4. In reaching that conclusion, *Sessions* cites *Brack v. Omni Loan Co*., 164 Cal. App. 4th 1312 (2008), a choice-of-law case in which the California Court of Appeal concluded that while the Finance Lender Law "does not contain an express anti-waiver provision," the statutory scheme as a whole "represents a fundamental policy of this state." *Brack*, 164 Cal. App. 4th at 1328.

Like the plaintiff in *Sessions*, the plaintiffs in the present action also base their UCL claim on California's Finance Lender Law statutes.[5] And, they have (indirectly) identified a judicial

---

[5] To the extent plaintiffs claim that a strong public policy is reflected in the other bases for their UCL claim, they have not cited any statute or judicial decision that clearly says so.

United States District Court
Northern District of California

decision, *Brack*, that holds that those laws represent a "fundamental policy" of California.

Nevertheless, this Court is not persuaded that plaintiffs have met their burden to show that

enforcement of the forum selection clause would *contravene* a fundamental California policy as

reflected in California's Finance Lender Law.  In *Sessions*, the court concluded that enforcement

of the forum selection clause at issue would violate such a policy because the parties' choice-of-

law provision meant that a "court sitting in New York would apply New York substantive law and

need not engage in a conflict-of-laws analysis." *Sessions*, 2017 WL 7156283 at *4.  *Sessions*,

however, did not consider whether New York law differed from California's Finance Lender Law

in ways that might make New York an inadequate forum for the protection of the plaintiff's

interests.  The Ninth Circuit has noted that courts may consider choice-of-law clauses in

evaluating whether a forum selection clause should be enforced.  *Sun*, 901 F.3d at 1088 n.4 ("Our

analysis of the *M/S Bremen* exceptions does not change when the agreement includes a choice-of-

law clause in addition to a forum selection clause.  We generally treat the analysis as coextensive

and consider the clauses' impact together.").  Even so, in noting that the public policy exception to

enforcement of forum selection clauses tracks the exception for deprivation of the plaintiffs' day

in court, the Ninth Circuit has stated that more weight might be given to a state policy where the

plaintiffs "would be denied *any* relief" in the preselected forum.  *Id*. at 1089 n.6.  For example, in

*AOL*, a putative consumer class action, the Ninth Circuit concluded that the plaintiffs in that case

had identified "the kind of declaration 'by judicial decision' contemplated by *Bremen*," where the

California appellate court concluded that California's consumer protection laws embody a strong

California policy, including the ability to bring consumer law class actions, and where enforcing

the forum selection clause designating Virginia state courts would deprive the plaintiffs of any

remedy because Virginia state courts did not allow consumer class actions.  *AOL*, 552 F.3d at

1083-84; *see also, e.g., Richards* 135 F.3d at 1295-96 (concluding that statutory antiwaiver

provisions did not void choice-of-law and choice-of-forum provisions where the preselected

English courts provided plaintiffs with adequate remedies under English law); *Perry v. AT&T*

*Mobility LLC*, No. C 11–01488 SI, 2011 WL 4080625, at *5 (N.D. Cal. Sept. 12, 2011) (declining

to enforce a forum selection clause requiring disputes to be brought in Florida, finding that the

United States District Court
Northern District of California

12

case presented "a true conflict of law" between Florida and California law and application of
Florida law would deprive the plaintiff of unwaivable statutory rights to minimum wage and
overtime payments); *Brack*, 164 Cal.App.4th at 1328-29 (declining to enforce a choice-of-law
provision where California would suffer greater impairment of its policies vis-à-vis Nevada if
preselected Nevada law were to be applied).

Here, plaintiffs have not demonstrated that proceeding in New York would deprive them
of an adequate remedy, let alone any remedy whatsoever.  Plaintiffs assert that in California the
maximum permissible interest rate without violating usury laws is 10 percent, whereas the parallel
interest rate ceiling in New York is 25 percent.  Dkt. No. 12 at 3:3-5; Dkt. No. 24 at 10.  Even
assuming plaintiffs' characterization of New York law is accurate, it is not apparent why that
aspect of New York law would deprive plaintiffs of any remedy, particularly where plaintiffs
allege that each of the Agreements involves interest rates that exceed 179 percent, well above the
maximum permissible rate in both California and New York.  Indeed, elsewhere in their
opposition, plaintiffs suggest that New York and California law are similar with respect to alleged
usurious transactions.  *See* Dkt. No. 12 at 3:27-28 and 11 n.4.  Plaintiffs further claim that
California has passed new legislation regarding financial disclosures for commercial products,
including merchant cash agreements (Dkt. No. 12 at 2 n.1), but they provide no analysis to support
their contention that New York "ignores" that law.  *Id.*; *see also* Dkt. No. 24 at 10.

For these same reasons, the Court does not find that *Sessions* is persuasive authority for the
proposition that enforcing the forum selection clauses at issue would contravene any strong
California public policy reflected in California's usury laws.  Although *Sessions* noted the
plaintiff's allegations that the interest rate for the contract in question violated California's usury
laws as set forth in the California Constitution, the court offered little or no analysis for its
conclusion that enforcing the forum selection clause at issue would violate a strong public policy
as embodied in those laws.  *Sessions*, 2017 WL 7156283 at *5.

Plaintiffs also argue, in highly conclusory fashion, that jury waiver and class action waiver
provisions in the Agreements violate a strong California policy and are themselves unfair and
unenforceable.  Dkt. No. 12 at 16.  Mr. Dumbaya's declaration merely echoes the legal

United States District Court
Northern District of California

conclusions asserted in plaintiffs' brief.  Dkt. No. 13 ¶¶ 24-25.  The issue before the Court, however, is whether the forum selection clauses in the Agreements should be enforced.  In that regard, plaintiffs' stated concern about any loss of class action remedies is unconvincing, as they have not brought their claims on behalf of any class.  As for plaintiffs' stated concerns about their right to a jury trial, at oral argument they indicated that they are addressing their right to a jury trial not only under California law, but under the Seventh Amendment of the U.S. Constitution, which indisputably applies in both California and New York.  Regardless whether plaintiffs' jury trial arguments are based in California or federal law, plaintiffs have not demonstrated how enforcement of the forum selection clauses at issue would adversely impact those rights.

To the extent that plaintiffs' opposition suggests that the forum selection clauses should not be enforced because AMZ violated California Welfare and Institutions Code § 14115.5 in connection with plaintiffs' receipt of funding from Medicaid/Medi-Cal (Dkt. No. 12 at 18), their arguments—a single sentence in a 22-page brief—fall far short of demonstrating that enforcement of the forum selection clauses at issue would violate any strong California policy.

In sum, plaintiffs have not met their heavy burden to show that the public policy exception to enforcement of the forum selection clauses applies.

### C.    Public Interest Factors

Having failed to establish that the forum selection clauses in question are invalid or unenforceable, plaintiffs may avoid a transfer to the preselected forum only by demonstrating that public interest factors make such a transfer inappropriate.  *Atl. Marine*, 571 U.S. at 63-64.  As noted above, the Court does not give any weight to plaintiffs' choice of forum, deems the parties' private interests to weigh entirely in favor of the preselected forum, and considers only whether public interest factors weigh in favor of a California forum for plaintiffs' claims.  *Id*.  The public interest factors to be considered "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id*. at 63 n.6 (internal quotations and citation omitted).  "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."

1   *Id.* at 64.

2       Here, plaintiffs claim that substantial events underlying their claims occurred in California

3   and that "California has a strong interest in the enforcement of its usury and finance lending laws

4   and in protecting its own citizens under its own lending laws." Dkt. No. 12 at 17.  In essence, they

5   claim that, in the public interest, California law should govern and California public policy

6   requires keeping this lawsuit in this Court.  These arguments have already been considered above,

7   and rejected, and plaintiffs have not demonstrated that a strong California policy outweighs the

8   strong federal policy of enforcing forum selection clauses.  Plaintiffs have failed to raise any

9   exceptional circumstances or public interest factors that preclude enforcement of the forum

10  selection clause.

11  **IV.    CONCLUSION**

12      Based on the foregoing, AMZ's motion to dismiss is granted.  As noted above, rather than

13  dismiss plaintiffs' complaint outright, this Court will instead transfer this action to federal court in

14  New York.[6]  The Clerk of the Court shall transfer this action to the United States District Court for

15  the Eastern District of New York.  Upon transfer, the Clerk shall close the file in this District.

16      **IT IS SO ORDERED.**

17  Dated: September 25, 2020

18

19

20  VIRGINIA K. DEMARCHI
    United States Magistrate Judge

21

22

23

24

25

26  [6] At the motion hearing, plaintiffs suggested, without explanation, that this matter could be
    transferred to the Southern District of New York.  Dkt. No. 24 at 7.  Because AMZ's lawsuit
27  currently is pending in the Eastern District of New York, that is where this Court will transfer this
    matter.  *See* 28 U.S.C. § 112(c) (stating that the County of Kings is located in the Eastern District
28  of New York).

15

*United States District Court*
*Northern District of California*